**U.S. DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**American Federation of Government Employees, Respondent–Intervenor.**

**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 88–7166, 88–7205.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1989.

Decided July 27, 1989.

John R. Bolton, Asst. Atty. Gen., Gregory C. Sisk, Atty., I.N.S., Washington, D.C., for petitioner-respondent.

William E. Persina, Acting Sol., James F. Blandford, Atty., Federal Labor Relations Authority, Washington, D.C., for respondent-petitioner.

Martin R. Cohen, American Federation of Government Employees, Philadelphia, Pa., for respondent-intervenor.

Before HUG, HALL and WIGGINS, Circuit Judges.

HUG, Circuit Judge:

This case concerns the question of whether the Immigration and Naturalization Service is required to bargain with the employees' union over the type of trousers that may be worn as a part of the official service uniform. We hold that the designation of the components of the official uniform is a management right preserved to the employing agency by the applicable federal statute.

I.

The Immigration and Naturalization Service (the "INS") seeks review of an order by the Federal Labor Relations Authority (the "Authority") arising under the Federal Service Labor–Management Relations Act (the "FSLMRA"), 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986). The Authority ordered the INS to bargain over a decision to alter the practice of allowing border patrol agents on rough duty in the San

Diego sector to wear green, levi-styled jeans instead of the INS's standard, green, drill uniform trousers. The union for the border patrol agents, the American Federation of Government Employees (the "union"), has intervened, and the Authority has moved for enforcement of the order. Our jurisdiction rests on 5 U.S.C. § 7123(c) (1982). The arbitrary and capricious standard of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1982), controls our review. *Id.* § 7123(c). For the reasons set out below, we decline to enforce the Authority's order.

## II.

The FSLMRA establishes a system for controlling labor-management relations in the federal sector through collective bargaining between federal agencies and their employees' unions. 5 U.S.C. §§ 7101–7135 (1982 & Supp. IV 1986); *Defense Language Inst. v. FLRA,* 767 F.2d 1398, 1399 (9th Cir.1985), *cert. dismissed,* 476 U.S. 1110, 106 S.Ct. 2004, 90 L.Ed.2d 647 (1986). As a general rule, federal agencies must bargain over changes in employment conditions whether those conditions are set by contract or past practice. *See* 5 U.S.C. § 7103(a)(12), (14) (1982). Under 5 U.S.C. § 7106, however, an agency's duty to negotiate over conditions of employment is subject to certain management rights that are non-negotiable or negotiable only at the agency's option. The INS contends that its decision to ban green jeans as part of the rough duty uniform for border patrol agents was a decision setting a "method" or "means" of performing INS work within subsection 7106(b)(1) that is negotiable only at the INS's option. We agree.

We recently held that an INS policy forbidding uniformed immigration inspectors from wearing small union patches or other insignia while on duty affected the methods or means of performing work within the meaning of subsection 7106(b)(1). *INS v. FLRA,* 855 F.2d 1454, 1464–65 (9th Cir. 1988) [hereinafter *"INS I"*]. In rejecting the Authority's contrary interpretation of subsection 7106(b)(1) as unreasoned and unsupported, we noted that the management

rights provided in that subsection evince congressional intent to empower "agencies such as the INS to govern the appearance of their public contact employees." *INS I,* 855 F.2d at 1465. We reasoned that a federal agency's right to require uniforms for its employees who deal with the public necessarily encompasses the right to require an unadorned uniform. *Id.* at 1464. We determined that such control was essential because allowing ornamentation of the uniform with objects of an employee's personal choosing would undermine the broad range of purposes that uniforms serve. *Id.* at 1464–65.

The reasoning and result of *INS I* control this case. In *INS I,* the INS's policy involved minor ornamentation to an otherwise complete and standard uniform. In the present case, the INS's policy sets the actual contents of the uniform. The right to control the actual uniform components, like the right to proscribe uniform ornamentation, necessarily inheres in the INS's unquestioned right to require border patrol agents to wear a uniform. The Authority's decision to the contrary cannot be reconciled with *INS I.*

The union and the Authority raise two arguments for distinguishing *INS I* from the present case—neither argument persuades us. The Authority and the union first rely on the lack of similarity between the alleged unfair labor practices underlying the Authority's decisions in *INS I* and the present case. In *INS I,* the Authority determined that the INS's ban on small union insignia violated the inspectors' right to organize, join, and participate in a union as guaranteed by 5 U.S.C. § 7102. In the present case, the Authority determined that the INS's unilateral change of the past practice of allowing green jeans on rough duty breached the duty to bargain in good faith over conditions of employment under 5 U.S.C. § 7103(a)(12). But this difference in the underlying charges against the INS is immaterial to the analysis under subsection 7106(b)(1). If applicable, section 7106 cloaks the INS's exercise of management rights with the same protection regardless of the type of unfair labor practice alleged under other provisions of the FSLMRA.

*See id.* § 7106(a) ("nothing in this chapter shall affect the authority of any management official of any agency" to exercise the rights reserved by subsection 7106 to the agency).

The union and the Authority next rely upon the Authority's finding that the INS failed to show how the continued wearing of green jeans would interfere with the INS's stated goal of fostering public cooperation and respect. They assert that this finding enjoys ample support in the record, which includes an arbitrator's determination that green jeans and the standard uniform trousers are nearly identical in appearance. The Authority's finding, however, provides no basis for distinguishing the present case from *INS I.* In *INS I,* the Authority also found "no reason to believe 'that the wearing of the [union insignia] interfered *in any way* with the purpose for which the [INS] requires the uniform to be worn.'" *INS I,* 855 F.2d at 1469 (Norris, J., dissenting) (emphasis in original). By interpreting section 7106 in *INS I* as an expression of congressional intent to empower federal agencies to control the appearance of their public contact employees, we implicitly rejected the Authority's finding of noninterference as a basis for circumscribing the INS's exercise of control over adornments to border inspectors' uniforms. *INS I* therefore compels our rejection of the Authority's present finding that green jeans do not inhibit public recognition of and support for border patrol agents as a basis for curtailing the INS's assertion of control over the actual components of the uniform.

### III.

In light of our decision in *INS I,* we cannot sustain the Authority's order requiring the INS to bargain over its new trouser policy as a reasoned and supported decision under the arbitrary and capricious standard.

ENFORCEMENT DENIED.